313-0339 Donald Barber, appellant, by Christopher Boland, v. Village of Bradley and the Village of Bradley Police and Fire Commission, Appalachia, by Susan Wilder Mr. Boland, good morning Madam Presiding Justice, your honors, may the counsel please the court. My name is Christopher Boland and I'm here on behalf of Donald Barber, who was the plaintiff in a lawsuit filed in order to obtain a promotion from the position of sergeant to lieutenant for the Village of Bradley Police Department. In essence, in May of 2009, Donald Barber was a sergeant with the Village of Bradley, and at that time there existed in the Village of Bradley two lieutenants, a position for a deputy chief and a police chief, and patrol officers below. There existed six sergeants at that time. Lieutenant Hackley was one of the two lieutenants submitted to his resignation in May of 2009, and thereafter, at that time, there was a promotional list that listed three persons eligible to be promoted to lieutenant. Donald Barber was ranked first, and two other sergeants were also on the list, one of whom was on disability at the time that the resignation occurred. In the Village of Bradley, the procedure that is defined by code and by ordinance is that the village board establishes the makeup of the police department. The police and fire commission is charged with the duty of doing the promotions within the police department. There is no description of a process for doing promotions within the police department, other than it is required of the police and fire commission that they make promotions in accordance with state law, and that's the language from the ordinance that we've cited in our brief. The issue arises, in this case, because of the process that's described in the applicable statute, 65 ILCS 5-10-2.1-15, which I'll refer to as the promotional statute for ease here. The promotional statute, in its very last sentence, says that the boards will strike the names of candidates for promotional appointment after they have remained there on for more than three years, provided there is no vacancy existing which can be filled from the promotional register. This promotional list was set to expire in October of 2009. This proceeding started with a request for an injunction to keep the promotional list from being stricken until such time as the vacancy existing, as the plaintiff alleged, from Lt. Hackley's retirement be filled. Can't there be a reduction in the number of officers for budget purposes? I mean, it almost appears in part in your argument you're saying once you've established the organizational chart to say there's, you know, top on the chart and then two captains and three lieutenants, you know, whatever number you have, as long as there's a promotional list, you're stuck with that, you can't change that. That would seem to be contrary to any good government budgetary... There is a process by which that can be changed, and the Village of Bradley Ordinance has defined that process, and in fact they followed that process in dealing with the position of deputy chief. They adopted an ordinance in 2003 creating the position. They adopted an ordinance in 2009 eliminating that position. In 2007 they adopted a resolution that created the positions of defined benefits for lieutenants. Two months after they adopted that resolution, they appointed two new lieutenants. At no time have they ever or did they ever adopt any counter-resolution or ordinance saying now there's only one lieutenant, and that's the process by which it's described in their own ordinances that the village board determines the makeup of the police department, and they have the right to do that. And you're absolutely right, there is no prescription on them adopting an ordinance saying we're now going to eliminate one lieutenant's position in light of the fact for prematrician or for whatever reason, or even if there was a stakeholder in that position. I think they have the right to do that. But they don't have the right to do nothing and then not conform with the state statute by not promoting from the list while the list exists, and that's our argument here. Now their argument is, well, there was a budgetary cutback in the following year's budget or in the budget that would apply to this year. The truth is, when you look at the appropriation ordinance, first of all, let me back up a second. The defense of the appropriation ordinance and the budget ordinance as not defining the two lieutenants' position is quite frankly irrelevant, because when they created the two lieutenants' positions, the budget and the appropriation ordinance had no reference to lieutenants whatsoever. And yet those people were the positions created and the two lieutenants appointed during the budget year and appropriation year that made no reference to their position. It's also inappropriate to use that as a defense, because after Lieutenant Hackley retired and Sergeant Barber was assigned the duties of administrative assistant, they appointed a seventh sergeant, again with no budgetary, nothing in the budget and nothing in the appropriation ordinance saying, now there are going to be seven sergeants. They simply didn't. They simply made the appointment with no reference whatsoever. So to argue that, well, because Lieutenant Hackley's position was going to be eliminated after two months of the budget, because that's in essence what happened. After two months of the budget, he was not going to be funded. First, it's contrary to the contents of the budget, because the budget showed that they budgeted $57,000 for Lieutenant Hackley's separation. Well, the way they did it was financially savings. It would have been, yes. But within their budget, there was no savings, because they budgeted more than enough for Lieutenant Hackley's position in reference to Lieutenant Hackley and a separation package for Chief Coy, who of course never separated. But there was not only $57,000 as a line item for separation costs for Hackley, they also budgeted for his salary and his buyout in addition to the $57,000. So their budget defense, quite frankly, is inconsistent with their own budget. Now, I have no argument that a village or municipality has the right to control the makeup of its police department, but you have to do it in conformity with your own ordinances and with the state statute. Mr. Boland, is there any requirement anywhere that the village of Bradley have two lieutenants? Well, the answer is yes, I believe there is. That there is only because of the village's own action. Okay, but my question is, is there any rule or ordinance that requires there to be two lieutenants? I want to give you an easy answer, and I beg your pardon, but let me give you a little more. The answer to that is, there is the requirement that they fill the vacancy that existed when Lieutenant Hackley retired in accordance with the state statute. There is nothing implicitly that says you must have two lieutenant positions, other than the fact that they created two lieutenant positions. They have funded two lieutenant positions, and therefore we argue that establishes the existence of the vacancy at the time of Hackley's retirement. That's a long-winded, I apologize. There's nothing in any state statute or any municipal ordinance other than their own resolution that says they shall have two lieutenants. Before 2007, interestingly, they had no ordinance or resolution establishing a lieutenant position, but Chief Coy had held the lieutenant position for a number of years before he became deputy chief. I don't know under what authority he was appointed as lieutenant. Nobody could ever describe that. So the answer is, my argument is, once you say there are two lieutenants, until you say there are two lieutenants by reversing the resolution you've adopted, that creates the position of a vacancy as defined by the state statute that says it must be filled from this promotional list. I hope I gave you an answer to your question. You did. So in answer to your question, you're saying that until you do something else, when somebody leaves, you're mandated, you're obligated to fill that other spot. So in the promotional statute, yes. So no one can choose to say, well, we're just going to leave that open for a while for budgetary reasons, financial reasons, or management reasons? You can if there isn't a promotional list that's going to expire. The issue is the freezing of the promotional list. They wanted and let the promotional list expire in October of 2009, which eliminated those three individuals' rights to be promoted to lieutenant when a vacancy existed. And that brings us back to the dilemma in this case, is the definition of a vacancy. What is a vacancy? And both sides have attempted to describe the process of when a vacancy existed. My position and my client's position is there is no municipal provision that defines when a vacancy exists. They describe it as what they call an historical practice. But the historical practice was, in essence, and I would argue, it's whatever you want to do tomorrow that you do today. Because their historical practice by the mayor's own testimony was, well, I could ask for a position to be filled, the police chief could ask for a position to be filled, or the board could ask for it to be filled on their own. And, incidentally, he also testified that the police and fire commission could fill it on their own volition if they chose to. So what's the historical precedent here? There is none. So they could choose not to fill it? I think that they could have, but for the issue of the striking of the promotional list. So if there was no promotional list, they wouldn't have to fill the vacancy? That's correct. If there's a promotional list, then they're mandated to fill the vacancy, and the authority for that is the law about promotional lists? That's correct. It freezes the promotional list, it requires the vacancy to be filled from that promotional list. So implicit in the promotional list rule is the requirement that that be filled unless they take other steps? I believe that's our position, and it's more specifically our position that it freezes the promotional list until the vacancy is filled. Now, if you choose to postpone the filling of the vacancy, our argument would be okay, but your promotional list has to stay in effect. This promotional list has to stay in effect until you fill the vacancy. In fact, off the record, the vacancy's ultimately been filled. But regardless of that fact, they allowed this list to expire, and that's where the violation of the state statute is. Does the state statute define vacancy? No. So we have to resort to case law. So why are you looking at the city's practice in terms of defining vacancy? I'm not. Shouldn't we be looking at how state law considers vacancy? Absolutely. I couldn't agree more, and that's why we argue. Because my background is, having been an associate judge for quite a while before I came to this court, when there was a vacancy in an associate judge's position, there was a rule for some time due to budgetary considerations that the vacancy wouldn't be filled for a certain amount of time. So that salary went back into the state budget. Is it possible that the vacancy isn't created until somebody declares there's a vacancy? That was the position taken by the trial court, relying upon what it said was historical precedent of the city or the village. My argument is, there is no historical precedent of the village. In state law, there is no case that defines when a vacancy exists for purposes of police and fire commission promotions. There are a number of cases that we have cited that describe when a resignation becomes effective, which in effect creates a vacancy at that point in time. But not always. Because I know the chief judge has to request that a vacancy be filled, and it is not filled until the Supreme Court decides the vacancy. And that's a process which is codified at least by administrative rule, as I understood it. There is no codification of that process here. So because there is no codification by regulation, rule, anything that's been introduced into this record, and there isn't any. So I assume once the list expired, then your client was not on the top of the next list? That's correct. Two minutes. I will very briefly deal with the last issue, and I'm sorry I got intrigued with my own argument, I think. No, I appreciate it. I'm glad you do it. The other issue that has been raised is that Mr. Barber has no vested right to file or essentially no standing to bring this lawsuit. Our position is that he has standing to require the village to fill its vacancy. Whether it be with him or with somebody else is going to be up to the village ultimately. But the requirement is that somebody be filled from that promotional list for the vacancy that exists. Now, we have also introduced substantial evidence that the board had always followed the police chief's recommendation, and the police chief would have recommended Barber had it come to that. We're asking this court to reverse the trial court, to find that a vacancy existed, and find that the village of Bradley is required to promote somebody from that existing promotional list to fill the vacancy. Thank you very much. Are there any other questions? Okay. Thank you, Mr. Boland. Ms. Glover, good morning. Good morning. Justices, counsel, may it please the court. This position can be summed up very simply. Mr. Barber is asking to be appointed to a position that does not exist and that he is not entitled to. As counsel stated, Mr. Barber was first on the sergeant's list at the time Lieutenant Hackley retired in 2009. However, Mayor Adams, newly elected, sworn in in May 2009, took a hard look at the budget and realized that the village was $270,000 in the hole. And needed to make up that, at least a portion of that deficit. He talked to the police chief, Chief Coy, who had recently been promoted to chief from the deputy chief position, and they came up with a plan that the deputy chief position would be eliminated outright and that the lieutenant's position would be brought down from two lieutenants to one lieutenant through attrition, through the retirement of Mr. Hackley. Now, counsel has made much about the ordinance and the lieutenant's ordinance which created the position, but to get to the justice's question earlier, that ordinance establishing the lieutenant's position does not state how many lieutenants. It just states the duties and responsibilities and parameters of anyone in the position of lieutenant. There still was a lieutenant's position after Mr. Hackley's retirement. There was just one lieutenant as opposed to two. Mr. Barber is claiming that the village didn't take the requisite action to eliminate that second position of lieutenant, but that's not the case. If you look at the, first of all, if you look at the historical practice of the village, and yes, much is being made of the historical practice of the village, because the village and Judge Watsonman cited the fact that it had been used 11 times in the prior years, just up to this appointment. The historical practice was the police chief went to the village board requesting a promotion. The village board then considered it and authorized, sent authorization to the police and fire, the fire and police commission to fill that vacancy. That is not inconsistent. It was not haphazard. That was the practice that was set in place from 2000, I think it was 2007 forward. It had been used 11 occasions between 2007 and 2010, that precise action. So the fact that it was not codified anywhere is not a requirement by anything. In fact, this is the exact process that took place in the Hammer case that was cited by Judge Watsonman as compelling here, because that exact process took place in Peoria and was upheld. Now, because in the Hammer case, yes, that was created by regulation and by ordinance, but it was the exact process. And nowhere in the Hammer case does the court find that that process was only relevant because it was codified. So to now claim that is not directly on point here. In regard to the matter of whether the resignation of Lieutenant Hackley required that vacancy to be filled, we don't believe that's the case either. Certainly there are multiple instances where a resignation may take place, and for budgetary reasons, management-style reasons, a village or any manager may decide, you know what, we're not going to fill that position right now. Maybe we're going to look and see whether we can operate without that second lieutenant's position. So even if that, and we submit that the money wasn't there. The money in the budget was for Mr. Hackley's retirement. The budget was there. The second position was only funded through his retirement on June 30. And then there was a separate line item for his payout under his contract, under his retirement bonus, so to speak, for when he paid out. Even if this court were to find that the money was there, there's nothing that compels the village to fulfill that position. We've talked about the budget deficit there. They could have sat on it for six months, sat on it for eight months, and then chosen to fill it. But here they didn't do that. And, in fact, people, XREL Hawkinson versus Conlix, and I know I said that quickly and I do have the site for you, states that there is no legal duty to file if there is an appropriation made. Just because there's an appropriation made doesn't mean that position must be filled. And, in fact, we would submit that if such a requirement were to exist, then that would take the discretion out of the hands of the legislative body, here the village board and the mayor, to determine whether that was an appropriate thing for either management or budgetary reasons for the employer in this case, which is the city. The other issue that the council has raised relates to whether this position, I believe he stated, and I'm paraphrasing, that if there was a promotional list in place, they would have been required or mandated to fill that position when that resignation took place. But that's not the case, because if you read the Fire and Police Commission Act as a whole, you'll see that statutorily the village is required to keep up and constantly have a promotional list. They would be out of compliance with the Police and Fire Commission Act if they did not, in fact, have a list in place at all times. So by council's argument, they must have a list at all times so that any resignation would mandate the filling of that position immediately once the resignation occurred because they had a promotional list. He also stated that he isn't seeking that he be promoted to that list, but that someone be promoted to that list. Well, if you look back at the First Amendment complaint, which controls in this case and is what the trial was over, he specifically states that he should be, Mr. Barber should be appointed to this list, that he had a property interest in this case in being promoted to lieutenant. He does not ask that the list be frozen. He does not ask that someone be promoted. Only now, when we get to this level, before your honors, does he say, well, someone should have been promoted, not Mr. Barber. And the case law clearly shows that there is no property interest in a promotion under the Board and Fire Commission cases. It simply is a venue, an avenue for that vacancy to be filled should a vacancy be declared, should there be a vacancy. And we went through a litany of these cases in our brief, and I won't repeat, but I would suggest that the DiGiuseppe case versus Bellwood, the plaintiff argued that a vacancy existed in the position of lieutenant when the former lieutenant was promoted with the chief. The case there, the first district disagreed and said, and actually went so far as to say that any step further to state an attempt to appoint the plaintiff to that position he argues he's entitled to, that promotion would be void and of no legal effect. And we believe that that is really true, because that is exactly what Mr. Barber is seeking here. We'd also direct your attention to the Schickler case, Schickler versus Board and Fire Police Commission, again, where the practice was promoting... Let me go back. Mr. Barber asserts that Chief Coy testified that he probably would have appointed Mr. Barber, had a vacancy in fact existed, and that has been the case. And so Mr. Barber is trying to say, well, because Chief Coy said that Mr. Barber would have likely been recommended, then that should control to place him in that position. But the Schickler case clearly states that the practice of promoting number one on the list doesn't supersede the rule of three option that is present in the Fire and Police Commission Act. The rule of three option states that one of the top three must be promoted. That is statutorily the requirement. So the practice that may have existed over the course of years, or even in this case, one year or one instance, doesn't mean that Mr. Barber was entitled to that position. It only means that he would have been one of three people who would have been entitled to that position. Of course, in other cases, they can go so far as to say that if there's only two people on the list, then that doesn't mean that those two people would be required, but maybe a third on that list would be as well. So we don't believe that it's compelling or somewhat disingenuous to argue now after the fact that he was entitled to that, or the case wasn't saying that he was entitled to the position. That was not the position that was based in the complaint. It's not the position that Judge Wenselman ruled on. And to go with the Hawkinson case that I referred to earlier specifically states that Illinois cases have consistently held  And that position on the eligibility list does not provide a necessary right to an appointment. That's People X. Rel. Hawkinson v. Conlix, 119 Ill. F. 2nd, 431. And with that, we would submit that there was no vacancy here. And even if there was a vacancy here, the Illinois Municipal Code is not the source of a property right to an appointment. The village understands that Mr. Barber must have been disappointed when he realized that he was number one on that list, but that second lieutenant's position wasn't being filled. However, his disappointment does not warrant the rejection of the budgetary process that the village went through, the legislative body went through, and that the Municipal Code in dozens of cases reject the theory that a specific officer is entitled to promotion by virtue of that promotion list. Therefore, the village respectfully requests that Judge Wenselman's finding be upheld and that this matter be affirmed. Are there any questions I can answer? I have a question about the list. Sure. Is it reviewed every three years and recompiled, or is it like a revolving list where after three years the first one's removed and then the second one's been there less than three years moves up? Yeah, there's a new test that's held every three years. So all eligible officers have the ability to retest, but it is not if you've been on, you get struck and move up. Okay. So it could be an entirely different list. Mr. Barber had the option to retest. He had the option to retest and chose not to. As I understand, there's nothing cumulative about the list. Every three years, everybody just takes the test again, and the list is reestablished again. Correct. Can you address standing? The standing issue in that Mr. Barber is only one of the three. We would argue that there is no standing here because he does not have that vested right in the position. If this were a declaratory action, would he have standing? We don't believe so. We don't believe so because we believe that the Illinois case law is very clear that there is no vested right if you are one of three in that list of three. There is no property interest, if you will, in the position that may or may not get vetted. So here it's kind of a double standing issue because first of all, we argue that there's no vacancy, so there's no standing to bring the claim because there's no vacancy. And second of all, even if there was a vacancy, Mr. Barber does not have standing to bring this case because he has no property interest in that position, should it have been vacant. Thank you, Your Honors. Thank you. Mr. Bowlen, rebuttal. Let me clarify two issues. First is that Mr. Barber was on a list, promotional list, one of three eligible to be promoted. This case was brought as an injunction to say to the village, you cannot strike that promotional list. The reason being that yes, he would then have everybody's off the list and you have to start all over. You retake the test. Certainly everybody can retake the test. There may be more people eligible than there were before, all kinds of reasons. But the statute is very clear on that issue. When there is a vacancy, you don't strike the list, and that's the relief we sought in the trial court. So insofar as his standing, he's one of three that had standing to request that list should not be stricken until you fill the vacancy. Back to the question that Justice Carter asked, can the village not fill the position? Absolutely they cannot fill the position. They can choose to do that. They can choose to eliminate the position. But if they choose not to eliminate the position but simply not fill it, that's when the statute comes into effect and the list should be frozen. And the cases we cite talk about freezing the list until such time as you fill the vacancy that existed during the time of that list. What if they took 10 years? That would be a simple remedy. You pass an ordinance saying there's only one lieutenant from this point on. That's a simple remedy. They could choose to do that. They didn't want to do that. They wanted to keep two lieutenants, and they chose not to do it until some time later. And here we are saying, well, okay, if you want to keep this as an open option, if you want to keep the position, you have to follow the statute, the promotional statute that says the list gets frozen at the time that the vacancy exists. And it's our argument that there is no definition of vacancy. I don't want to beat that horse to death, but I think you understand the position. Thank you very much. Unless there are other questions. Thank you. Thank you. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a panel change.